UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS MARKEY, Individually and On Behalf of All Others Similarly Situated, | No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| v. | **JURY TRIAL DEMANDED** |
| FUQI INTERNATIONAL, INC., YU KWAI CHONG, CHING WAN WONG, LIE XI ZHUANG, and CHARLENE HUA | |
| Defendants. | |

Plaintiff Thomas Markey, on behalf of all other similarly situated, by his attorneys, hereby alleges, upon knowledge with respect to facts concerning plaintiff and plaintiff's acts and as to all other matters, which generally concern facts not in plaintiff's possession, upon information and belief based on counsel's investigation, as follows:

## NATURE OF THE ACTION

1.    This is a class action on behalf of purchasers of the common stock of Fuqi International, Inc. ("Fuqi" or "Company"), between May 15, 2009, and March 16, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). As alleged herein, defendants published a series of statements that defendants knew and/or recklessly disregarded were materially false and misleading at the time of such publication and/or omitted to disclose material information necessary to make defendants' statements, in light of such material omissions, not materially false and misleading.

2.    Throughout the Class Period, with actual knowledge that its internal controls were materially deficient, defendants presented Fuqi's financial statements without any qualification, certifying their accuracy. Unbeknownst to investors, however, defendants' had falsified Fuqi's

financial statements for the first three quarters of 2009 by understating the cost of sales for the period, overstating gross profit and net income for the period, and overstating the reported earnings per share.

3.    While its share price was artificially inflated as a direct result of its materially false statements, Fuqi registered and sold to the investing public a substantial amount of stock during the third quarter of 2009.

4.    On March 16, 2010, defendants caused the Company to file a Current Report on Form 8-K with the Securities Exchange Commission (the "SEC") and to issue a press release, disclosing that Fuqi's internal accounting controls were in disarray and that the problems had caused them to misstate the Company's financial results. On that disclosure, the per share price of Fuqi's common stock plummeted. Prior to the disclosure of the bad news, on March 16, 2010, Fuqi's common stock closed at $19 per share. On March 17, 2010, Fuqi common stock opened at $12.26 per share. By day's end, the price closed at $11.90 per share – a 37.4 % decline on enormous volume of 17.3 million shares traded. By virtue of their having purchased Fuqi common stock at artificially inflated prices during the Class Period, plaintiff and the Class suffered damages.

## JURISDICTION AND VENUE

5.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. § 240.10b-5].

6.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. The common stock of Fuqi is listed on the NASDAQ and the Company regularly filed and continues to file periodic financial reports with the SEC, including annual audited financial reports.

2

7.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(d).  The common stock of Fuqi traded on the NASDAQ Global Select Market under the ticker symbol FUQI.  The Company is headquartered in Shenzen, People's Republic of China, and may properly be sued in any District of the United States, including this one.

8.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

9.      Plaintiff Thomas Markey purchased shares of Fuqi during the Class Period and sustained a loss as a result of those purchases.  Plaintiff Markey details his purchases and sales of Fuqi common stock on the Certification attached hereto and incorporated herein in its entirety.

10.     Defendant Fuqi operates through its wholly-owned subsidiary, Fuqi International Holdings Co., Ltd., a British Virgin Islands corporation ("Fuqi BVI") and its wholly-owned subsidiary, Shenzhen Fuqi Jewelry Co., Ltd., a company established under the laws of China ("Fuqi China").  Fuqi claims to be "a leading designer of high quality precious metal jewelry in China, developing, promoting, and selling a broad range of products to the luxury goods market in China."  Fuqi claims to sell its products directly to distributors, retailers and wholesalers, who in turn sell to consumers through both retail counters located in department stores and in traditional stand-alone jewelry stores.  Fuqi's principal offices are located in Shenzhen, in southern China.  Fuqi was formed when Fuqi BVI executed a reverse merger with a Nasdaq listed company called VT Marketing Services, Inc. ("VT").  The Reverse Merger closed on November 22, 2006 and VT issued an aggregate of 11,175,543 shares of common stock in exchange for all of the issued and outstanding securities of Fuqi BVI.  Upon the close of the

3

Reverse Merger, VT became the 100% parent of Fuqi BVI and on December 8, 2006, reincorporated from Nevada to Delaware and changed its corporate name from "VT Marketing Services, Inc." to "Fuqi International, Inc."

11.     The following persons are referred to herein collectively as the "Individual Defendants:"

(a)     Defendant Yu Kwai Chong ("Chong") is the principal founder of Fuqi and has served as President, Chief Executive Officer and Chairman of the Board of Directors since April 2001. Defendant Chong claims that "in day-to-day operations, [he] is responsible for the strategic planning, marketing and overall growth of" Fuqi. Defendant Chong claims "significant experience in the Chinese jewelry industry, having established the first gold jewelry manufacturing and sales company in Shenzhen over 20 years ago."

(b)     Defendant Ching Wan Wong ("Wong") has served as Fuqi's "Chief Financing Officer" since January 2004. According to the Company, defendant Wong received a Bachelor of Business Administration in Accounting from the Chinese University of Hong Kong in 1989 and "is a Certified Practicing Accountant in Australia, Certified Public Accountant in Hong Kong, and Certified General Accountant in Canada, and is experienced in international financial reporting and management."

(c)     Defendant Lie Xi Zhuang ("Zhuang") co-founded Fuqi and has served as its Chief Operating Officer since April 2001. He is responsible for production management and cost control.

(d)     Defendant Charlene Hua ("Hua") became Fuqi's Executive Vice President of Finance, Capital Market and Corporate Development in February 2009. Defendant Hua boasts over eleven years of "diverse experience in banking, finance, consulting, business

4

development and relationship management to the company." From August 2007 through November 2008, defendant Hua served as CFO of another Nasdaq listed company, China Technology Development Group Corporation (Nasdaq: CTDC). Prior to that she served as a vice president of Citigroup Global Markets, Inc. and an assistant vice president at JP Morgan Chase.

## CLASS ACTION ALLEGATIONS

12.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of Fuqi between May 15, 2009, and March 16, 2010, inclusive, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

13.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Fuqi common shares were actively traded on the Nasdaq. As of November 9, 2009, the Company had over 27.6 million shares of common stock issued and outstanding and traded in the United States. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Fuqi or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

15.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

16.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    Whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Fuqi; and

(c)    To what extent the members of the Class have sustained damages and the proper measure of damages.

17.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

A.  **Background**

18.    Based in Shenzhen, China, Fuqi claims to be "a leading designer of high quality precious metal jewelry in China, developing, promoting, and selling a broad range of products in the large and rapidly expanding Chinese luxury goods market."

19.    On March 16, 2009, the Company issued its Annual Report on Form 10-K for the year ended December 31, 2008 ("2008 10-K"). In that 2008 10-K, defendants caused the Company to disclose certain risk factors related to an investment in Fuqi common stock, including issues that could materially and adversely affect the Company's financial condition or results of operations.

20.    Among the risks of doing business in the People's Republic of China, defendants described the following:

> **Because our business is located in the PRC, we may have difficulty establishing adequate management, legal and financial controls, which we are required to do in order to comply with U.S. securities laws.**
>
> PRC companies have historically not adopted a Western style of management and financial reporting concepts and practices, which includes strong corporate governance, internal controls and, computer, financial and other control systems. Most of our middle and top management staff are not educated and trained in the Western system, and we may have difficulty hiring new employees in the PRC with such training. In addition, we may need to rely on a new and developing communication infrastructure to efficiently transfer our information from retail nodes to our headquarters. As a result of these factors, we may experience difficulty in establishing management, legal and financial controls, collecting financial data and preparing financial statements, books of account and corporate records and instituting business practices that meet Western standards. Therefore, we may, in turn, experience difficulties in implementing and maintaining adequate internal controls as required under Section 404 of the Sarbanes-Oxley Act of 2002. This may result in significant deficiencies or material weaknesses in our internal controls. In recent years, we have identified both

significant deficiencies and material weaknesses in our internal controls. If we are not able to remediate these deficiencies and material weaknesses, and prevent future deficiencies, it could impact the reliability of our financial statements and prevent us from complying with SEC rules and regulations and the requirements of the Sarbanes-Oxley Act of 2002. Any such deficiencies, weaknesses or lack of compliance could have a materially adverse effect on our business. [Emphasis in original].

21.     Defendants also caused the Company to comment on internal control-specific risks in the 2008 10-K in which they stated:

With respect to the effectiveness of our controls and procedures as of December 31, 2007, Stonefield Josephson, Inc., our Independent Registered Public Accounting Firm, indicated to us that our accounting for certain significant transactions were incorrectly calculated or incorrectly recorded, which resulted in adjustments that constituted significant deficiencies in our internal controls over accounting and financial reporting.    Furthermore, in connection with our assessment as of December 31, 2008, our management concluded that our internal controls over financial reporting was not effective due to our failure to maintain effective controls over the period-end closing process, which was caused by an insufficient number of qualified resources.    Our management determined that this deficiency was a material weakness.    Our assessment also concluded that we did not maintain effective control over revenue cycle with revenue recognition in improper periods. While we have implemented steps to remediate the identified material weaknesses, there can be no guarantee that we will be successful in our attempts to correct our significant deficiencies. Our identified material weaknesses and significant deficiencies may raise concerns for investors and may have an adverse impact on the price of our common stock. See "ITEM 9A. CONTROLS AND PROCEDURES," below, for additional information.

22.     In the 2008 10-K, however, defendants gave no indication that the financial statements therein were the product of material misstatements.    Indeed, in the management discussion and analysis section of the 2008 10-K, defendants caused the Company to state:

Management's discussion and analysis of results of operations and financial condition are based upon our consolidated financial statements. ***These statements have been prepared in accordance***

8

*with accounting principles generally accepted in the United States of America.* These principles require management to make certain estimates and assumptions that affect amounts reported and disclosed in the financial statements and related notes. The most significant estimates and assumptions include valuation of inventories, provisions for income taxes, allowance for doubtful accounts, and purchase price allocation relating to the business acquired. Actual results could differ from these estimates. Periodically, we review all significant estimates and assumptions affecting the financial statements and record the effect of any necessary adjustments. [Emphasis added].

23.    In addition, notwithstanding their risk disclosure concerning the Company's internal controls, defendants included their independent auditor's report in the 2008 10-K, certifying Fuqi's financial statements as materially correct. The auditor, Stonefield Josephson, Inc. ("Stonefield"), stated:

REPORT    OF    INDEPENDENT    REGISTERED    PUBLIC ACCOUNTING FIRM

To the Board of Directors and Stockholders of
Fuqi International, Inc.
Shenzhen, China

We have audited the accompanying consolidated balance sheets of Fuqi International, Inc. and its subsidiaries (the "Company") as of December 31, 2008 and 2007, and the related consolidated statements of income and comprehensive income, stockholders' equity, and cash flows for each of the years in the three-year period ended December 31, 2008. Our audits also included the financial statement schedules listed in the index at Item 15. These financial statements and the schedules are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements and schedules based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement. An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements. An audit also includes assessing the

9

accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

*In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of Fuqi International, Inc. as of December 31, 2008 and 2007, and the results of its operations and its cash flows for each of the years in the three-year period ended December 31, 2008, in conformity with accounting principles generally accepted in the United States of America.* Also in our opinion, the related financial statement schedules, when considered in relation to the basic financial statements taken as a whole, presents fairly in all material respects the information set forth therein.

We also have audited, in accordance with the standards of the Public Company Accounting Oversight Board (United States), the Company's internal control over financial reporting as of December 31, 2008, based on criteria established in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO) and *our report dated March 30, 2009 expressed an adverse opinion.* [Emphasis added]

/s/ Stonefield Josephson, Inc.
Wanchai, Hong Kong
March 30, 2009

24.    In its opinion, Stonefield had noted its adverse conclusions concerning the Company's internal controls, but had also simultaneously certified that its financials presented fairly the financial position of the Company. For investors, therefore, accurate financials could exist notwithstanding the Company's internal control deficiencies. Prior to the start of the Class Period, therefore, defendants had both disclosed the Company's internal control weaknesses – warning about the obvious possible problems that might result from those deficiencies – and had issued unaudited and audited financial statements that fairly and accurately stated the Company's then true financial condition.

25.    As the Class Period began, investors had no reason to doubt the material accuracy of the financial statement defendants caused Fuqi to disseminate.

B.    **False and Misleading Statements**

(1)    *Defendants Issue False and Misleading Financial Reports for the Quarter Ended March 31, 2009*

26.    On May 15, 2009, Fuqi filed with the SEC its quarterly Report on Form 10-Q for the period ended March 31, 2009. In that report, defendants detailed Fuqi's financial results for the quarter ended March 31, 2009. For the three months ended March 31, 2009, Fuqi reported net sales – gross sales net of returns – of $109.3 million, a 41% increase compared with the same period in 2008. According to Fuqi, costs of sales were $91.3 million and increase of $22.5 million or 32.7% over the same period in 2008. In addition, Fuqi reported net income of $9.7 million or $0.45 per diluted share, an increase of $3.3 million or 51.6%.

27.    In the Notes to Fuqi's Condensed Consolidated Financial Statement in the 1st quarter Form 10-Q, defendants stated:

> In the opinion of the management, *these condensed consolidated financial statements reflect all adjustments which are of a normal recurring nature and which are necessary to present fairly the financial position of Fuqi as of March 31, 2009* and the results of operations and the cash flows for the three-month periods ended March 31, 2009 and 2008. These condensed consolidated financial statements and related notes should be read in conjunction with the Company's annual report on Form 10-K for the fiscal year ended December 31, 2008. The results of operations for the three months ended March 31, 2009 are not necessarily indicative of the results which may be expected for the entire fiscal year. The Company's business is seasonal in nature, with its sales and net income generally higher in the fourth calendar quarter.

> The preparation of condensed consolidated financial statements in conformity with accounting principles generally accepted in the United States of America requires us to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements and the reported amounts of

11

revenue and expenses during the reporting period. Actual results could differ from those estimates. [Emphasis added].

28.    Further, in the Management Discussion and Analysis section of the 1st quarter 10-Q, defendants stated:

> Management's discussion and analysis of results of operations and financial condition are based upon our consolidated financial statements. ***These statements have been prepared in accordance with accounting principles generally accepted in the United States of America.*** These principles require management to make certain estimates and assumptions that affect amounts reported and disclosed in the financial statements and related notes. The most significant estimates and assumptions include valuation of inventories, provisions for income taxes, allowance for doubtful accounts, and purchase price allocation relating to the business acquired. Actual results could differ from these estimates. Periodically, we review all significant estimates and assumptions affecting the financial statements and record the effect of any necessary adjustments. [Emphasis added].

29.    In addition, on May 15, 2009, defendants caused Fuqi to issue a press release, summarizing its results for the first quarter of 2009.  In that release, the Company repeated the results disseminated in the 1st quarter Form 10-Q.

30.    The foregoing financial results and disclosures thereon, contained in the May 15, 2009 Quarterly Report and press release, were materially false and misleading.  Defendants' statements were false and/or misleading because (1) the Company's financial statements did not conform with GAAP; (2) the financial statements did not fairly present the financial position of Fuqi; (3) the cost of sales for the period were understated; (4) gross profit and net income for the period were accordingly overstated; (5) the earnings per share reported by the Company were overstated based on approximately 23.0 million weighted average number of shares outstanding; (6) the Company lacked adequate internal controls and failed to take the necessary steps to remediate those controls.

31.    Defendants were reckless, however, in reporting financial results without qualification. In a section of the 1st quarter Form 10-Q on internal controls, defendants noted internal control weaknesses. They stated:

**Disclosure Controls and Procedures**

Disclosure controls and procedures refer to controls and other procedures designed to ensure that information required to be disclosed in the reports we file or submit under the Securities Exchange Act is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the SEC and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, as appropriate, to allow timely decisions regarding required disclosure.

As required by Rule 13a-15(b) under the Securities Exchange Act, our management has carried out an evaluation, with the participation and under the supervision of our Chief Executive Officer and our Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures as of March 31, 2009. As discussed in more detail below, our Chief Executive Officer and our Chief Financial Officer concluded that our disclosure controls and procedures were ineffective as of March 31, 2009, due to the material weaknesses that we identified in internal control over financial reporting, specifically related to period-end closing process and revenue recognition in improper periods.

1. *We did not maintain effective control over the period-end closing process.* Due to the insufficient number of qualified resources, we were unable to timely and accurately complete our work needed to close our books and prepare financial statements in accordance with accounting principles generally accepted in the United States of America for period covered by this report. In addition, this control deficiency could result in a material misstatement to annual or interim financial statements that would not be prevented or detected.

2. *We did not maintain effective control over the revenue cycle with revenue recognition.* We did not properly perform and follow the control procedures set forth in the revenue cycle. This control deficiency resulted in significant amounts of sales not being recorded in the proper periods.

**Remediation Measures of Material Weaknesses**

We have implemented the following measures in 2009 as indicated:

1. We have increased efforts to enforce internal control procedures. We have started restructuring our China financial department and clarifying the responsibilities of key personnel in order to increase communications and accountability. Under the new procedures, non-routine transactions are identified and presented to senior financial management when discovered to ensure proper accounting treatment. We will seek opportunities to provide additional technical resources in order to improve the quality of the reviews of underlying financial information related to certain significant transactions. We will continue to review and assess the effectiveness of the restructuring and make modifications accordingly in an effort to improve the effectiveness of our control procedures.

2. We have hired and will continue to hire additional qualified financial personnel for the accounting department to further strengthen our China financial reporting function. In 2009, we hired 4 additional personnel in our accounting and finance department.

3. We will continue to evaluate our existing staff and make modifications as necessary, in addition to providing additional training on accounting principles and internal control procedures for our existing staff. We have also required all personnel in our China financial department to obtain additional accounting certifications.

4. We continually review and improve our standardization of our monthly and quarterly data collection, analysis, and reconciliation procedures. To further improve the timeliness of data collection, we are selecting and will install new point of sale systems and enterprise resource planning systems for our wholesale and retail operations. We have also implemented a variety of manual review procedures, such as an extensive review of journal entry postings into the accounting system, a thorough review of account reconciliation, and a detailed review by our U.S. reporting team of the trial balance from our China entity, to ensure the completeness and accuracy of the underlying financial information.

5. We have increased the level of communication and interaction among sales department, production department, PRC accounting team and other external advisors. In addition, our Chief Financial Officer and US GAAP team are becoming increasingly involved with the financial accounting and reporting process in China and are monitoring such processes. For example, we will relocate a portion of the US GAAP team from our Hong Kong office to our Shenzhen offices to strengthen the local accounting and reporting processes.

6. We are in the process of expanding the internal control functions and honing related policies and procedures. As referenced above, we hired a qualified and experienced Internal Audit Manager, who commenced work in January 2009. We also plan to allocate and transfer additional resources to the internal audit department for the purpose of enhancing the internal audit function.

**Changes in Internal Controls over Financial Reporting**

Due to the implementation of the remedial measures described above, in addition to the designing, planning, and integration of the internal controls over financial reporting for Temix, there were changes in our internal controls over financial reporting during the first quarter of fiscal 2009 that have materially affected, or are reasonably likely to materially affect our internal control over financial reporting. [Emphasis in original]

32.    In the Form 10-Q, however, defendants Chong and Wong certified the accuracy of Fuqi's financial statements in their required Sarbanes-Oxley certifications. Defendants Chong and Wong appended the following statement to that Form 10-Q, certifying as follows:

1. I have reviewed this report on Form 10-Q of Fuqi International, Inc.;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and

cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

a. designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b. designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c. evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

d. disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

a. All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's

ability to record, process, summarize and report financial information; and

b. Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

33.     For the following reasons, the foregoing certification was materially false and misleading.

(a)     Under US securities laws, financial statements are required to be prepared in accordance with Generally Accepted Accounting Principles ("GAAP"). GAAP are those principles recognized by the accounting profession and the SEC as the conventions, rules and procedures necessary to define accepted accounting practice at a particular time. Further, SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1) states that financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite footnotes or other disclosures. Regulation S-X also requires that interim financial statements must also comply with GAAP, with the exception that interim financial statements need not include disclosures which would be duplicative of disclosures accompanying annual financial statements (17 C.F.R. §210.10-01(a)).

(b)     As a publicly traded company, the Exchange Act requires Fuqi to maintain books and records in sufficient detail to reflect the transactions of the Company and therefore prepare financial statements in accordance with GAAP. Specifically, the Act requires that public companies:

(A)     make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer;

(B)     devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that—

17

(i)      transactions are executed in accordance with management's general or specific authorization;

(ii)      transactions are recorded as necessary (I) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and (II) to maintain accountability for assets. (15 USC §78m(b)(2))

(c)      Moreover, the Sarbanes Oxley Act ("SOX") requires a public Company to evaluate and report on the effectiveness of its *internal controls over financial reporting*, 15 U.S.C. §7262 annually and that the principal officers certify their responsibilities for financial reports in each quarterly and annual filing. 15 U.S.C. §7241. Further, the SEC requires that issuers maintain, and regularly evaluate the effectiveness of, *disclosure controls and procedures* designed to ensure that the information required in reports under the Act is recorded, processed, summarized and reported on a timely basis. Also, SOX requires a Company's independent auditors to audit managements' assessment of internal controls over financial reporting.

(d)      Despite the wording in the certification, Fuqi's disclosure controls and procedures as well as its internal controls over financial reporting were not effective. More, even when the filings disclosed that controls were not effective, including material weaknesses, Fuqi still assured investors that its financial statements were prepared in accordance with GAAP and that the identified material weaknesses *could* have resulted in a material misstatement to annual or interim financial statements that would not be prevented or detected.

34.      Defendants recklessly disregarded or knew that Fuqi's financial statements for the 1st quarter of 2009 did not fairly present, in all material respects, "the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in" its public statements.

35.    In the May 15, 2009 press release, regarding Fuqi's results, defendant Chong

stated:

> We are excited to continue posting strong financial results in the
> first quarter of 2009, and are pleased to be one of the leaders in the
> growing luxury jewelry market in China, which has been
> somewhat resistant to the effects of the economic downturn.
> Despite the health of the global economy, we have put in place a
> structure that has allowed us to continue growing at respectable
> rates. We are now beginning to see signs of stability in the Chinese
> economy, which we believe will bode even better for our future
> results. We are focusing our efforts to drive the continued growth
> of our retail business and we believe the traditionally larger
> margins will have an increasingly significant impact on our
> profitability as our retail business continues to grow. We will
> continue to serve our wholesale customers optimally, by
> maintaining the right amount of inventory and varieties of design
> on hand at all time to fulfill our customer demand.

36.    The May 15, 2009 press release mentioned nothing about the Company's internal

control issues.  Rather, without any hint of discomfort, defendant Chong unabashedly stated,

"Our keen financial management has allowed us to post this impressive growth, and enabled us

to begin to distinguish ourselves from the competition. We plan to continue to conservatively

manage our balance sheet so that we are always ready to capitalize upon profitable opportunities

in the marketplace." Similarly, without a hint of doubt about the accuracy of its financial reports

or its ability based on those reports to project the future, the Defendants stated:

> For the second quarter, the Company anticipates total revenue
> between approximately $89.5 - $93.5 million which includes
> wholesale and retail revenues. Net income in the second quarter is
> expected to be in the range of $5.9 - $6.9 million, or $0.27 - $0.32
> per diluted share, based on a weighted average share count of 21.5
> million shares.
>
> For the full year 2009, the Company currently expects full-year
> revenue of approximately $442.0 - $465.0 million. These estimates
> include both wholesale and retail revenues and exclude the impact
> from any potential acquisitions. The Company also anticipates net
> income of approximately $32.0 - $35.0 million, or diluted EPS of

$1.49 - $1.63, based on a weighted average share count of 21.7 million shares.

37.    Thus, while they did note internal control weaknesses in the 1st quarter Form 10-Q, defendants did not hesitate to certify the accuracy of the Company's financial reports and to tout them to the market.  With knowledge of the control weaknesses, however, defendants recklessly or knowingly certified materially inaccurate financial statements.

38.    More, the market relied on the accuracy of those reports.  On May 14, 2009, Fuqi's common stock closed at $6.49 per share on 441,000 shares traded.  On the next two trading days, the price of Fuqi common stock increased to close at $9.05 – an increase of 39.4% – on volume of 1.3 million shares on May 15, 2009 and 1.3 million shares on May 18, 2009.  On May 15, 2009, *Investors Business Daily*, reporting on the large bump in Fuqi's trading price, stated "The Chinese jeweler handily beat analysts' first-quarter profit views, though sales came up a bit short. Fuqi projected more of the same for the rest of the year."

39.    On June 10, 2009, Fuqi, through defendant Hua, presented at the Piper Jaffrey Consumer Conference.  Hua delivered a general talk about the Company's markets and focus. With respect to defendant Chong, she stated, "he certainly has extensive experience in financial control and reporting and sizable market and international operations. . . ."  Neither in her remarks nor in the question and answer session that followed did defendant Hua mention control issues.  She did, however, reiterate the Company's guidance, stating:

> So for 2009 guidance, we have actually anticipated to be in the $450 million to $465 million for the revenue and for the net income, we anticipate it in the range of $30 million to $35 million. And so actually in terms of the blended gross profit margin, it will be in the range of, as I said, 14% to 16%.  So that actually the revenue contribution from retail would be in the range also in the 15% to 20%.

40.    Analysts, therefore, were not focused on the control issues.  For example, a June 29, 2009 *Investor Business Daily* story quoted Merriman Curhan Ford analyst Eric Wold as stating, "In our opinion, Fuqi International's strong brand and established wholesale distribution coupled with the recent entry into the higher margin retail channel should help it take increasing market share."  That article continued that Wold believed Fuqi's balance sheet was strong and that "Fuqi had posted five straight quarters of triple-digit revenue growth before reporting a 41% sales gain in the fourth quarter, to $109.4 million."  When asked about risks, neither Investor's Business Daily nor Wold mentioned internal controls.  Instead, they focused on commodity prices posing a risk, but stated that "so far the firm has managed to hedge that risk and shift some onto customers.  Fuqi told analysts it ended the last quarter with a gold inventory that cost it about 7% below the then-current market price."

### (2)    Defendants Issue False and Misleading Financial Reports for the Quarter Ended June 30, 2009

41.    On July 22, 2009, defendants caused Fuqi to issue a press release and filed a Current Report on Form 8-K with the SEC, announcing that "based on its preliminary review of its financial results for the three months ended June 30, 2009, the Company believes that its second quarter earnings per share will be at or higher than the high end of its previously released forecast of $0.27 to $0.32 per diluted share. . . ."  On that news, the price of Fuqi common stock jumped from a July 22, 2009 close of $20.52 to a close of $22.28 on July 23, 2009, an increase of almost 9%.

42.    On June 24, 2009, the Company filed with the SEC a Form S-3 Registration Statement for up to $100,000,000 of the Company's securities, including its common stock (the "Registration Statement").  The Registration Statement was declared effective July 22, 2009.

43.     On July 30, 2009, the Company filed with the SEC a Form S-3MEF amendment to the Registration Statement, registering an additional amount of the Company's common stock with a proposed maximum aggregate offering price of $20,000,000.

44.     On July 31, 2009, the Company filed with the SEC its Final Prospectus Supplement on Form 424B5 to the Company's Prospectus dated July 22, 2009 (the "Prospectus"), offering 4,855,000 shares of the Company's common stock at a price of $21.50 per share.

45.     In the Prospectus, the Company incorporated by reference documents previously filed with the SEC, including its Quarterly Report on Form 10-Q for the three months ended March 31, 2009 filed with the SEC on May 15, 2009 that contained false and misleading financial statements as described above. Thus, with the price of the common stock artificially inflated, Fuqi raised over $97.5 million after underwriting discounts, commissions, and offering expenses.  Had the Company floated the securities after the March 16, 2010 disclosure of adverse facts it likely would not have been able to raise nearly that amount – funds it "intend[ed] to use . . . for general corporate purposes, including expansion of our retail business, capital expenditures, working capital and possible acquisitions and investments in complementary businesses and product lines."

46.     On August 6, 2009, Fuqi filed with the SEC its quarterly Report on Form 10-Q for the period ended June 30, 2009.  In that report, defendants detailed Fuqi's financial results for the quarter ended June 30, 2009.  For that quarter, Fuqi reported net sales – gross sales net of returns – of $100.8 million a 50.6% increase compared with $66.9 million in the same period in 2008.  According to Fuqi, costs of sales were $83.5 million, an increase of $23.7 million or

39.7% over the same period in 2008. In addition, Fuqi reported net income of $9.9 million or

$0.45 per diluted share, an increase of $4.6 million or 86.8%.

47.    In the Notes to Fuqi's Condensed Consolidated Financial Statement in the 2nd

quarter Form 10-Q, defendants stated:

> In the opinion of the management, *these condensed consolidated*
> *financial statements reflect all adjustments which are of a*
> *normal recurring nature and which are necessary to present*
> *fairly the financial position of Fuqi as of March 31, 2009* and the
> results of operations and the cash flows for the three-month periods
> ended March 31, 2009 and 2008. These condensed consolidated
> financial statements and related notes should be read in
> conjunction with the Company's annual report on Form 10-K for
> the fiscal year ended December 31, 2008. The results of operations
> for the three months ended March 31, 2009 are not necessarily
> indicative of the results which may be expected for the entire fiscal
> year. The Company's business is seasonal in nature, with its sales
> and net income generally higher in the fourth calendar quarter.
>
> The preparation of condensed consolidated financial statements in
> conformity with accounting principles generally accepted in the
> United States of America requires us to make estimates and
> assumptions that affect the reported amounts of assets and
> liabilities and disclosure of contingent assets and liabilities at the
> date of the financial statements and the reported amounts of
> revenue and expenses during the reporting period. Actual results
> could differ from those estimates. [Emphasis added].

48.    Further, in the Management Discussion and Analysis section of the 2nd quarter 10-

Q, defendants stated:

> Management's discussion and analysis of results of operations and
> financial condition are based upon our consolidated financial
> statements. *These statements have been prepared in accordance*
> *with accounting principles generally accepted in the United*
> *States of America.* These principles require management to make
> certain estimates and assumptions that affect amounts reported and
> disclosed in the financial statements and related notes. The most
> significant estimates and assumptions include valuation of
> inventories, provisions for income taxes, allowance for doubtful
> accounts, and purchase price allocation relating to the business
> acquired. Actual results could differ from these estimates.
> Periodically, we review all significant estimates and assumptions

23

affecting the financial statements and record the effect of any
necessary adjustments. [Emphasis added]

49.     In addition, on August 6, 2009, defendants caused Fuqi to issue a press release,

summarizing its results for the second quarter of 2009. In that release, the Company repeated the

results disseminated in the 2nd quarter Form 10-Q.

50.     The foregoing financial results, contained in the August 6, 2009 Quarterly Report

and press release, were materially false and misleading. Defendants' statements were false

and/or misleading because (1) the Company's financial statements did not conform with GAAP;

(2) the financial statements did not fairly present the financial position of Fuqi; (3) the cost of

sales for the period were understated; (4) gross profit and net income for the period were

accordingly overstated; (5) the earnings per share reported by the Company were overstated

based on approximately 23.0 million weighted average number of shares outstanding; (6) the

Company lacked adequate internal controls and failed to take the necessary steps to remediate

those controls.

51.     Again, defendants were wholly reckless, however, in reporting financial results

without qualification. In a section in the 2nd quarter Form 10-Q on internal controls, defendants

noted the same internal control weaknesses. They stated:

**Disclosure Controls and Procedures**

Disclosure controls and procedures refer to controls and other
procedures designed to ensure that information required to be
disclosed in the reports we file or submit under the Securities
Exchange Act is recorded, processed, summarized and reported
within the time periods specified in the rules and forms of the SEC
and that such information is accumulated and communicated to our
management, including our Chief Executive Officer and Chief
Financial Officer, as appropriate, to allow timely decisions
regarding required disclosure.

As required by Rule 13a-15(b) under the Securities Exchange Act,
our management has carried out an evaluation, with the

24

participation and under the supervision of our Chief Executive Officer and our Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures as of June 30, 2009. As discussed in more detail below, our Chief Executive Officer and our Chief Financial Officer concluded that our disclosure controls and procedures were ineffective as of June 30, 2009, due to the material weaknesses that we identified in internal control over financial reporting, specifically related to period-end closing process and revenue recognition in improper periods.

1.    We did not maintain effective control over the period-end closing process. Due to the insufficient number of qualified resources, we were unable to timely and accurately complete our work needed to close our books and prepare financial statements in accordance with accounting principles generally accepted in the United States of America for period covered by this report. In addition, this control deficiency could result in a material misstatement to annual or interim financial statements that would not be prevented or detected.

2.    We did not maintain effective control over the revenue cycle with revenue recognition. We did not properly perform and follow the control procedures set forth in the revenue cycle. This control deficiency resulted in significant amounts of sales not being recorded in the proper periods.

**Remediation Measures of Material Weaknesses**

We have implemented the following measures in 2009 as indicated:

1.    We have increased efforts to enforce internal control procedures. We have started restructuring our China financial department and clarifying the responsibilities of key personnel in order to increase communications and accountability. Under the new procedures, non-routine transactions are identified and presented to senior financial management when discovered to ensure proper accounting treatment. We will seek opportunities to provide additional technical resources in order to improve the quality of the reviews of underlying financial information related to certain significant transactions. We will continue to review and assess the effectiveness of the restructuring and make modifications accordingly in an effort to improve the effectiveness of our control procedures.

2.    We have hired and will continue to hire additional qualified financial personnel for the accounting department to further strengthen our China financial reporting function. In 2009, we hired 4 additional personnel in our accounting and finance department.

3.    We will continue to evaluate our existing staff and make modifications as necessary, in addition to providing additional training on accounting principles and internal control procedures for our existing staff.    We have also required all personnel in our China financial department to obtain additional accounting qualifications

4.    We    continually    review    and    improve    our standardization of our monthly and quarterly data collection, analysis, and reconciliation procedures. To further improve the timeliness of data collection, we are selecting and will install new point of sale systems and enterprise resource planning systems for our wholesale and retail operations. We have also implemented a variety of manual review procedures, such as an extensive review of journal entry postings into the accounting system, a thorough review of account reconciliation, and a detailed review by our U.S. reporting team of the trial balance from our China entity, to ensure the completeness and accuracy of the underlying financial information.

5.    We have increased the level of communication and interaction among sales department, production department, PRC accounting team and other external advisors. In addition, our Chief Financial Officer and US GAAP team are becoming increasingly involved with the financial accounting and reporting process in China and are monitoring such processes.    For example, we will relocate a portion of the US GAAP team from our Hong Kong office to our Shenzhen offices to strengthen the local accounting and reporting processes.

6.    We are in the process of expanding the internal control functions and honing related policies and procedures. As referenced above, we hired a qualified and experienced Internal Audit Manager, who commenced work in January 2009.    We also plan to allocate and transfer additional resources to the internal audit department for the purpose of enhancing the internal audit function. Moreover, we also hired an international accounting firm to provide professional support to our internal control functions to achieve compliance of internal controls required by the Sarbanes-Oxley Act of 2002.

**Changes in Internal Controls over Financial Reporting**

> Due to the implementation of the remedial measures described above, in addition to the designing, planning, and integration of the internal controls over financial reporting for Temix, there were changes in our internal controls over financial reporting during the second quarter of fiscal 2009 that have materially affected, or are reasonably likely to materially affect our internal control over financial reporting. [Emphasis in original].

52.     In the Form 10-Q, however, once again, defendants Chong and Wong falsely certified the accuracy of Fuqi's financial statements for the period ended June 30, 2009, in their required Sarbanes-Oxley certifications. Defendants Chong and Wong appended the following statement to that Form 10-Q, certifying as follows:

> 1.     I have reviewed this report on Form 10-Q of Fuqi International, Inc.;
>
> 2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;
>
> 3.     Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;
>
> 4.     The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> > a.     designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;